# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

TAMARA MCKINNEY )
)
        Plaintiff )
)
           vs. )
)
LAURIE ROMA )
)
        Defendant )

Case No. 14-CV-3345

Judge M. Douglas Harpool

## DEFENDANT LAUREN WATANABE'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant Lauren Watanabe, for her answer to Plaintiff Tamara McKinney's Complaint, states as follows

1.      Defendant admits that Plaintiff McKinney purportedly seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, as to the following:

> (a) that she is the copyright owner of her novel titled Owned: A New World Order Book ("*Owned*"),
>
> (b) that she has not infringed and is not infringing any copyrights of defendant Watanabe,
>
> (c) that defendant Watanabe is not the copyright owner of words and concepts listed in paragraph 35 of this Complaint; and
>
> (d) that Watanabe is liable for Misrepresentation under 17 U.S.C. § 512(f).

Defendant, however, denies that there is any factual or legal basis for any of Plaintiff's claims against Defendant in this action.

1

2.     Defendant admits that Watanabe accused McKinney of copyright infringement and violation of Watanabe's contractual rights in the cease and desist letter attached to the Complaint as Exhibit A, which McKinney ignored.  Defendant also admits that cease and desist letters which Plaintiff has not enclosed with her Complaint were sent to four e-commerce sites alleging that McKinney's and their advertising, sale and distribution of the infringing work *Owned* violates Watanabe's copyrights and contractual rights and demanded the cessation of these activities.  Defendant admits that McKinney's novel *Owned* was removed from these four e-commerce sites.  Defendant denies the remaining allegations in paragraph 2.

## Parties

3.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, and on that basis, denies them.

4.     Defendant admits the allegations in paragraph 4.

## Jurisdiction and Venue

5.     Defendant admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 2201, 1367 and 17 U.S.C. §501.  Defendant, however, denies that there is any factual or legal basis for any of Plaintiff's claims against Defendant in this action.

6.     Defendant denies that McKinney is the sole author of *Owned*.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6, and on that basis, denies them.

7.    Defendant admits that she works under the pen name Laurie Roma.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 7, and on that basis, denies them.

8.    Defendant admits that sometime prior to the events causing this dispute, McKinney and Watanabe discussed the possibility of collaborating.  Defendant denies the remaining allegations of paragraph 8.

9.    Defendant denies the allegations in paragraph 9.

10.    Defendant denies the allegations in paragraph 10.

11.    Defendant admits that she provided McKinney copies of her novels written for the 3013 Series.  Defendant denies the remaining allegations in paragraph 11.

12.    Defendant admits that on or about June 10, 2014, McKinney received a letter, which she ignored, from a counsel of Watanabe alleging that, amongst other things, McKinney's novel *Owned* infringed the copyrights of Watanabe.  Defendant denies the remaining allegations in paragraph 12.

13.    Defendant admits that in the letter referred to in paragraph 13, a counsel for Watanabe states that Watanabe claims to be "the owner of a federal copyright for 3013: Mated and 3013: Claimed, is the sole originator of the original concept, idea, outline, manuscripts, and other documents and things, tangible and intangible" for the series called 3013.  Defendant denies the remaining allegations in paragraph 13.

14.    Defendant admits the allegations in paragraph 14.

15.    Defendant admits that the Letter demanded that McKinney "[i]mmediately agree in writing that you … will directly or indirectly engage in further unauthorized use of Lauren Watanabe's intellectual property…"[sic] and that McKinney send all 3013 related materials (e.g.,

3

3013 World Concepts excel spreadsheet notes pertaining to the series, etc.) that were in McKinney's possession, custody, or control to Watanabe. Defendant denies the remaining allegations in paragraph 15.

16. Defendant admits that the Letter also demanded that McKinney edit or remove certain material in the work and that changes would be reviewed by Ms. Watanabe to ensure compliance, and that such material included but was not limited to: (a) the use of "Alien Wars" in the manuscript as well as the book blurb; (b) the use of "Rebels" in the manuscript; (c) the use of "Quadrants" to describe the world regions in the manuscript as well as the book blurb; (d) the use of "Council" to describe the leadership of the governing body; (e) The use of "Stars" as an exclamation; (f) the use of saluting using a fisted hand over the chest/heart; (g) the use of girls being tested for infertility; (h) the use of wrist units as communication devices; (i) the use of soldiers being genetically modified for speed, agility, sight, hearing, strength and size; (j) the use of "Breeding Rights" for two men to claim a woman as clearly outlined in the prologue of the 3013 Series books, as well as in the manuscripts themselves, which is used in the *Owned* manuscript as well as the book blurb; and (k) the claiming ceremony using torques and a pledge given while kneeling in front of the woman chosen by the heroes of the storyline. Defendant denies the remaining allegations in paragraph 16.

17. Defendant admits that the Letter states that if a response was not received by June 14, 2014 indicating Ms. McKinney has fully complied with the requirements set forth in the Letter, counsel would contact McKinney's book distributors to remove *Owned* from all distribution venues (e.g., Amazon, Smashwords, etc) citing Ms. McKinney's copyright infringement and breach of contract and that counsel would advise Defendant of all her legal

4

remedies in connection with this matter. Defendant denies the remaining allegations in paragraph 17.

18.     Defendant denies that counsel for Watanabe identified in the previous paragraph of the Complaint and inferred in paragraph 18 sent any notice regarding *Owned* to any third party distributor. Defendant admits that the undersigned attorney for Watanabe sent letters that McKinney did not enclose with her Complaint to four e-commerce websites on which *Owned* was being advertised and offered for sale, alleging that McKinney's and their activities were in violation of Watanabe's copyrights and contractual rights. Defendant admits that McKinney's novel *Owned* was removed from these four e-commerce sites. Defendant denies the remaining allegations in Paragraph 18.

19.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 19, and on that basis, denies them.

20.     Defendant denies the allegations in paragraph 20.

21.     Defendant denies the allegations in paragraph 21.

22.     Defendant denies the allegations in paragraph 22.

23.     Defendant denies the allegations in paragraph 23.

24.     Defendant denies the allegations in paragraph 24.


## Count I: Declaration of Ownership

25.     Defendant incorporates by reference her responses to the preceding paragraphs of this Complaint as if fully set forth herein.

26.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 26, and on that basis, denies them.

5

27.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 27, and on that basis, denies them.

28.     Defendant denies that McKinney is the sole contributor to and author of *Owned*. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28, and on that basis, denies them.

29.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 29, and on that basis, denies them.

30.     Paragraph 30 does not contain any factual allegations.  To the extent a response is required, Defendant denies the allegations in paragraph 30.


## Count II: Declaration of Non-Ownership

31.     Defendant incorporates by reference her responses to the preceding paragraphs of this Complaint as if fully set forth herein.

32.     Defendant admits that Watanabe claims copyright ownership and contractual rights in subject matter that includes, but is not limited to, that which is set forth in Section 1(a) through (k) of the Exhibit A Letter.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32, and on that basis, denies them.

33.      The allegations contained in paragraph 33 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 33.

34.     Defendant denies the allegations in paragraph 34.

6

35.     Paragraph 35 does not contain any factual allegations.  To the extent a response is required, Defendant denies the allegations in paragraph 35.

## Count III: Declaration of Non-Infringement

36.     Defendant incorporates by reference her responses to the preceding paragraphs of this Complaint as if fully set forth herein.

37.     Defendant denies that McKinney is the sole author of and contributor of *Owned*. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37, and on that basis, denies them.

38.     Defendant denies the allegations in paragraph 38.

39.     Defendant denies the allegations in paragraph 39.

40.     Defendant denies the allegations in paragraph 40.

41.     Defendant denies the allegations in paragraph 41.

42.     Defendant admits that by contract, some distributors may discontinue the sale of any work for any reason, and that such distributors also have a requirement that they must either (a) hear from both parties to a dispute that the dispute has been resolved and the title can be re-activated, or (b) that there is a judgment in favor of the party whose book has been placed on inactive status as a result of a dispute with the other party.  Defendant denies the remaining allegations in paragraph 42.

43.     Paragraph 43 does not contain any factual allegations.  To the extent a response is required, Defendant denies the allegations in paragraph 43.

7

## Count IV:  Misrepresentation under 17 U.S.C. §512(f)

44.     Defendant incorporates by reference her responses to the preceding paragraphs of this Complaint as if fully set forth herein.

45.     Defendant admits that letters sent under the direction of Defendant were in part pursuant to 17 USC §512(c)(3)(A) and alleged, inter alia, that Plaintiff's publishing of *Owned* was in violation of Defendant's copyrights and of her written Agreement with Defendant. Defendant denies the remaining allegations in paragraph 45.

46.     Defendant denies the allegations in paragraph 46.

47.     Defendant denies the allegations in paragraph 47.

48.     Defendant denies the allegations in paragraph 48.

49.     Defendant denies the allegations in paragraph 49.

50.     Defendant lacks knowledge or information sufficient to form a belief as the truth of the allegations in paragraph 50, and on that basis, denies them.

51.     Paragraph 51 does not contain any factual allegations.  To the extent a response is required, Defendant denies the allegations in paragraph 51.


## Count V:  Injunction

52.     Defendant incorporates by reference her responses to the preceding paragraphs of this Complaint as if fully set forth herein.

53.     Defendant denies the allegations in paragraph 53.

54.    Defendant admits that her counsel had sent correspondence claiming that *Owned* infringes her copyrights and contractual rights. Defendant denies the remaining allegations in paragraph 54.

55.    Defendant denies the allegations in paragraph 55.

56.    Defendant denies the allegations in paragraph 56.

57.    Paragraph 57 does not contain any factual allegations.  To the extent a response is required, Defendant denies the allegations in paragraph 57.


## Affirmative Defenses

Without admitting any of the allegations of the Complaint other than those specifically admitted to herein, and without prejudice to Defendant's right to plead additional affirmative defenses as the facts may warrant, Defendant hereby asserts the following affirmative defenses:

1.  The Complaint fails to state a claim upon which relief may be granted.

2.  Plaintiff's claims and the relief requested are barred, in whole or in part, under the doctrine of unclean hands.

3.  Plaintiff's claims and the relief requested are barred, in whole or in part, by the doctrine of equitable estoppel.

Case 6:14-cv-03345-MDH   Document 13   Filed 10/03/14   Page 9 of 21

## COUNTERCLAIMS

Now comes Counter –Plaintiff Lauren Watanabe ("Watanabe"), and for her Counterclaims against Counter-Defendant Tamara McKinney a/k/a Hennessee Andrews ("McKinney"), alleges as follows:

## PARTIES

1.      Counter-Plaintiff Watanabe is a citizen of Illinois residing in Cook County, Illinois.

2.      Upon information and belief, Counter-Defendant McKinney is a citizen of Missouri residing in Greene County, Missouri.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §2201, 17 U.S.C. §101 *et seq.*, and 28 U.S.C. §§ 1338 and 1367.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.

## Background

5.      Counter-Plaintiff Lauren Watanabe (hereinafter "Watanabe" or Counter-Plaintiff) is an author of novels working under the pen name Laurie Roma.  Watanabe has authored several successful, independent and self-published novels.  Watanabe writes mainly contemporary, romantic suspense and sci-fi romance novels.

6.      Counter-Defendant Tamara McKinney (hereinafter "McKinney" or "Counter-Defendant") is an author of novels working under the pen name Hennessee Andrews.

10

7.       Since at least as early as April 2013, Watanabe had been contemplating a novel series that takes place in a futuristic, post-war, military controlled Earth.

8.       In the Spring of 2013, Watanabe asked McKinney whether she wished to participate in the series being created by Watanabe.  McKinney agreed.

9.       Watanabe selected a name for the Series, "3013," and continued developing plot, characters, dialogue, setting and other subject matter that would provide a foundation on which several books in the Series could be written over an extended period of time.

10.      Watanabe was the creator of the 3013 Series, including the original concept, ideas, first manuscripts and other related materials, as discussed herein.  In this role, Watanabe retained all rights in the subject matter, and wished to offer other authors an opportunity to collaborate and to write their own novels in the 3013 Series, subject to certain terms and conditions, including but not limited to Watanabe's right to approve any new work that uses the subject matter that she developed.

11.      In support of the development and promotion of the 3013 Series, Watanabe created a 3013 Series Facebook page (www.facebook.com/3013theseries), the banner of which is shown below:



12.      Separate and apart from the above, Watanabe also created a private, virtual room on Facebook in support of the "3013 Series."  Information regarding Facebook group pages is

available on the Internet at https://www.facebook.com/about/groups. Watanabe permitted only 3013 Series' authors to access this private, virtual room.

13. Within the private, virtual room, 3013 Series' authors received source materials, primarily in Microsoft Word and/or Excel Spreadsheet format. These source materials, which Watanabe created and posted in the private, virtual room provided the 3013 Series' authors with a wealth of information regarding plot, characters (including physical features and traits), terms and expressions for use in narration and dialogue, setting (including geography and other physical attributes of the 3013 World), draft prologues and excerpts from the first and third 3013 Series' novels authored by Watanabe ("3013: MATED" and "3013: CLAIMED," respectively), and other related materials.

14. Initially, Watanabe contemplated that 3013:CLAIMED would be the first novel of the 3013 Series and commenced work on this novel in the first half of 2013, as evidenced by her posting a prologue of this work in the private virtual room no later than June 19, 2013.

15. These source materials facilitated the ability of 3013 Series' authors to efficiently analyze, compare and contrast ideas and subject matter for their respective books.

16. Draft and final, published versions of 3013 Series' novels were also posted in the private, virtual room.

17. Watanabe filed applications to register her copyrights in 3013:MATED (published on December 28, 2013), and 3013:CLAIMED (published on April 14, 2014). Copyright Office Case Numbers for these pending applications are 1-1507063958 and 1-150063731, respectively. Watanabe has also filed an application to register her copyright in virtual, private room source materials referred to above (Copyright Office Case No. 1-

766773661). Certificates of Registration for all applications filed by Watanabe are expected to issue in the near future.

## 3013 Series Collaboration Agreement

18.    Consistent with their understanding, each 3013 Series' author executed a separate but identical 3013 Series Collaboration Agreement (the "Agreement") with Watanabe.

19.    Attached hereto as Exhibit A is the Agreement which McKinney received, reviewed and executed.

20.    Under Section 5 of the Agreement, Watanabe retained the sole rights to the "3013" world concept.

21.    Under Section 2, each new book created by McKinney using the "3013" world concept was subject to approval by Watanabe before publication.

22.    Under Section 7, any sequels, prequels or spin-offs of the 3013 World concept fell within the scope of the Agreement.

23.    Under Section 4, McKinney promised to adhere to the world concepts set forth in previous novels of the 3013 World, and agreed to change any inconsistencies within her book(s) to match the concepts already established by Watanabe for the Series.

24.    Under Section 4, McKinney also had the duty to gain permission to include any details that would change the world concept of 3013 or that would become permanent fixtures within the 3013 world.

25.    Under Section 6, McKinney and Watanabe agreed to perform all acts and execute all documents necessary or desirable to carry out the agreement in full to the best of their abilities.

13

26.     Under Section 6, McKinney was also free at any time to stop writing/creating novels using the 3013 world concept.

27.     Any new book created by McKinney using the "3013" world concept was subject to approval by Watanabe before its publication, whether or not the new book was officially published under the "3013 Series" or with "3013" as part of the title as required by Section 3 of the Agreement.

28.     On the condition that McKinney complied with the terms and conditions of the Agreement and her book was approved for publication, Watanabe would have no claim to any proceeds from McKinney's sale of her new book.

29.     At no time did McKinney ever state, orally or in writing, that she misunderstood or required clarification of any term or provision of the Agreement.

30.     At no time did McKinney ever object, orally or in writing, to any term, provision or obligation of the Agreement prior to publishing the novel entitled "*Owned*."

31.     Far from misunderstanding or confusion,  McKinney, through her own conduct, affirmed to Watanabe and other 3013 Series' authors that McKinney was continuing to operate under and abide by what she acknowledged was a valid Agreement by, for example:

    a.     continuing to access the private, virtual room dedicated to supporting the 3013 Series and its authors;

    b.     continuing to participate in confidential discussions in the private, virtual room on 3013 Series topics and concepts;

    c.     continuing to download and review, without exception, all private, virtual room postings of 3013 Series' source materials intended for use only by 3013 Series' authors;

d. inquiring about the status and progress that other 3013 Series' authors were making on their 3013 Series' books and updating these authors on the status and progress of her 3013 Series book, by consistently referring to their and her book using the "3013" name in lieu of any other name or identifier;

e. Retaining 3013 source materials after Plaintiff was advised that her publishing *Owned* was in violation of Defendant's copyrights and rights under the Agreement and despite Defendant's express request that they be returned

32. On or about May 18, 2014, McKinney sent Watanabe a draft manuscript of Owned for Watanabe's review and approval.

33. McKinney's draft manuscript for Owned incorporated many of the 3013 Series' elements and dynamics in plot, characters, setting (including but not limited to geography), and terms and expressions for use in narration and dialogue. However, it also attempted to change the history of certain characters established and built upon by each of three preceding 3013 Series' novels, making it incompatible and unsuitable as a 3013 Series' novel, sequel or spin-off under the Agreement.

34. Watanabe advised McKinney that changes would have to be made to her draft manuscript: (1) if McKinney were to publish her book as 3013 titled novel, she would have to make changes to make it compatible with the 3013 Series, or alternatively, (2) if she were to publish her book on her own without any relation to the 3013 Series, she would need to remove the material that defined the 3013 Series World.

35. McKinney pursued the second option above but refused to make the necessary changes requested by Watanabe and commenced publishing Owned using the "3013" subject

Case 6:14-cv-03345-MDH   Document 13   Filed 10/03/14   Page 15 of 21

matter, without Watanabe's approval, in violation of the Agreement and Watanabe's related copyrights.

36.     At least as early as June 3, 2014, McKinney published her book, making it available for sale on Amazon.com, and simultaneously or shortly thereafter, on www.smashwords.com, www.barnesandnoble.com, and www.allromanceebooks.com.

37.     Watanabe learned of McKinney publishing Owned not from McKinney but after seeing the book for sale online.

38.     Upon receiving notice of McKinney's wrongful activities, Watanabe demanded that McKinney's cease and desist from further violation of Watanabe's copyrights and her rights under the Agreement.  McKinney refused to comply.  As a complete contradiction to her acceptance and continuing affirmance, through conduct, of the 3013 Series Collaboration Agreement, McKinney stated "as per you [sic] contract, you do not designate what your world encompasses, therefore you cannot "claim" to own anything."  Also that same day, McKinney revealed that she was planning her own similar series, in which she would pursue further books based on the novel she had drafted for the 3013 Series.  As to her novel Owned which she was now publishing and refused to change, McKinney admitted, "[w]hile there will no doubt be some similarities [with the 3013 Series'] one must remember the story was originally written for 3013."

39.     On or around June 10, 2014, Watanabe had an attorney send to McKinney the letter attached to the Complaint as Exhibit A.

40.     Actionable similarities between Owned and Watanabe's 3013 source materials and novels entitled 3013:MATED and 3013: CLAIMED include, but were not limited to, the items set forth in the June 10, 2014 Letter attached referred to above.

16

41.    Additional, actionable similarities, particularly between Watanabe's

3013:CLAIMED and McKinney's Owned include, but are not limited to, the following:

   a. Each story takes place in a futuristic, post-war, military controlled Earth. War
      and conflict have decimated substantial portions of the earth and its population.

   b. Formal relations between men and women are governed by a strict law
      promulgated by a single governing body. Under the law, men file or petition in
      pairs for the right to bond with the opposite sex. Paired men then together seek to
      claim rights in a woman whom they both desire and select. The woman has no
      right to object. Assuming that the woman has not been previously claimed by
      another male pair, the two men and woman are then bonded together by law. No
      other formal or conjugal relationship between or among men and/or women is
      recognized under the law.

   c. Advances in science and technology allow for individuals, most of whom are
      soldiers, to receive enhancements to their senses, reflexes and other traits.
      Ironically, the government makes these enhancements available not to those in
      need but only to those who, in their natural state, are physically or cognitively
      superior to others.

   d. The heroine in each work is a woman who has remained exempt from being
      claimed under the law due to her special status or privilege. As a result, the
      heroine is not available to be claimed upon the expression of interest from others.

   e. Ultimately, however, the heroine voluntarily submits herself, out of her own
      interest and consent, to the claim of two male soldiers. Together, the heroine and

male soldiers consummate their relationship and partner to end a serious threat made to the safety and welfare of society.

## Count I : Breach of Contract

42. Counter-Plaintiff Watanabe incorporates herein by reference all allegations of the preceding paragraphs as if fully set forth herein.

43. The 3013 Series Collaboration Agreement is a valid and enforceable Agreement.

44. Watanabe performed her obligations under this Agreement.

45. McKinney's use of Watanabe's 3013 Series' source materials and the subject matter set forth therein, to create and publish Owned, without approval and over the objections of Watanabe, was a violation of the 3013 Series Collaboration Agreement.

46. Watanabe has suffered damages as a result of McKinney's breach of the Agreement.

47. Further, McKinney's actions in this regard have caused, and if resumed will continue to cause, irreparable harm to Watanabe and the "3013" Book Series, for which there is no adequate remedy at law.

## Count II: Copyright Infringement

48. Counter-Plaintiff Watanabe incorporates herein by reference all allegations of the preceding paragraphs as if fully set forth herein.

49. Watanabe is the sole author and owner of valid and enforceable copyrights in her novels entitled 3013:MATED and 3013:OWNED, and in the 3013 Series source materials referred to herein.

18

50.     Applications to register copyright in the foregoing materials have been filed and are pending before the U.S. Copyright Office.

51.     Counter-Defendant Tamara McKinney has published and threatens to continue publishing, without authorization, a work, currently entitled Owned that contains substantial similarities with the foregoing works of Watanabe.  McKinney's activities in this regard infringe and will continue to infringe Watanabe's copyrights.

52.     Watanabe has suffered substantial damages as a result of McKinney's infringement of Watanabe's copyrights.

53.     Further, McKinney's actions in this regard have caused, and if resumed will continue to cause, irreparable harm to Watanabe and the "3013" Book Series for which there is no adequate remedy at law.


**PRAYER FOR RELIEF**


WHEREFORE, for the reasons set forth above, Lauren Watanabe respectfully requests that judgment be entered in favor of her and against Tamara McKinney:


(a)     Dismissing, with prejudice, the Complaint filed in this Action in its entirety,

(b)     Declaring that the 3013 Series Collaboration Agreement is a valid and enforceable Agreement, and that Tamara McKinney breached the Agreement by publishing the book under the title Owned: A New World Order, in the state that it existed at the time of its first publication and thereafter,

(c) Declaring that Tamara McKinney, by publishing the book entitled Owned: A New World Order, has infringed valid and enforceable copyrights owned by Lauren Watanabe,

(d) Preliminarily and permanently enjoining McKinney from further publishing, distributing, advertising or selling the novel *Owned,* engaging in further acts in violation of the 3013 Series Collaboration Agreement and infringing Watanabe's copyrights.

(e) Declaring that Lauren Watanabe is a prevailing party;

(f) Awarding Lauren Watanabe the full costs, including reasonable attorneys' fees, that she has incurred in this Action,

(g) Awarding Lauren Watanabe such other and further relief as the court may deem just and proper.

Dated: October 3, 2014                    Respectfully Submitted,

                                          LATHROP & GAGE LLP

                                          /s/ Joseph L. Johnson
                                          Joseph L. Johnson (45456)
                                          JJohnson@LathropGage.com
                                          910 East St. Louis Street
                                          Suite 100
                                          Springfield, Missouri 65806-2523
                                          Telephone:      417.886.2000
                                          Telecopier:     417.886.9126

                                          Attorneys for Defendant


                                          s/ Louis J. Alex
                                          Louis J. Alex (IL 6274458) admitted *pro hac vice*
                                          Paul M. Raya (IL 6282070) admitted *pro hac vice*
                                          Cook Alex Ltd.
                                          200 W. Adams Street, Suite 2850
                                          Chicago, Illinois 60606

                                          Attorneys for Defendant

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a complete copy of the foregoing was electronically filed this 3rd day of October, 2014, with the Clerk of the Court using the efiling system which sent notification of such filing to the following: Arthur K. Shaffer, 7101 College Blvd, Suite 1520, Overland Park, KS 66210; ashaffer@theipcenter.com.


*/s/ Joseph L. Johnson*
Joseph L. Johnson